OPINION OF THE COURT
John A.K. Bradley, J.,
The defendant moves, pursuant to CPL article 440, to vacate the judgment of conviction entered after his plea of guilty to a charge of criminal possession of a controlled substance in the fifth degree. He was sentenced as a predicate felon to a term of two to four years. Defendant claims he was denied due process because prior to his plea, he was not advised by the People of exculpatory material in the People’s possession or control.
Defendant was arrested on February 13, 1993, by Police Officers Kennedy and Barrett, when Kennedy allegedly observed defendant throw a bag containing cocaine on top of a cooler. The officers allegedly recovered the narcotics. In his omnibus motion, defendant requested all exculpatory information known to the People. On May 17, 1993, the People disclaimed knowledge of such information. On February 16, 1994, the defendant accepted the People’s plea offer to a reduced charge and he was sentenced on March 21, 1994. The People acknowledge that defendant disclaimed his guilt in statements to the People prior to his plea. He also apparently advised his trial attorney that the police officers had removed more money from him than they vouchered. Defendant admits he was at the location alleged in the indictment, and claims he pleaded guilty because the case would turn on a credibility battle between himself, a convicted felon, and the police officers.
It appears that as early as mid-1992, an investigation was under way into police corruption. In early 1993, the Mollen Commission, created by Mayor Dinkins, was seriously investigating corruption at the 30th Precinct, the precinct of Officers Kennedy and Barrett. It is now clear that this investigation included charges that officers were shaking down drug dealers, reselling stolen drugs, and taking money from dealers.
In People v Chapman (Sup Ct, NY County, Mar. 5, 1995, Bradley, J., index No. 13641/92) this court denied a similar motion to the one presented here on the grounds that the Official Corruption Unit of the New York District Attorney’s office (OCU) had not developed any evidence of misconduct on *971 the part of the police officers involved at the time of the defendant’s guilty plea. This case, however, presents a very different situation. As of the date of defendant’s guilty plea, the Official Corruption Unit had developed serious information concerning the alleged activities of Officer Kennedy, including videotaped evidence of Kennedy assaulting an undercover officer during a sting operation, and hearsay evidence from cooperating officers. While the specific information disclosed by such officers has been redacted from the public record on this motion so as not to compromise the corruption investigation, the court concludes from the unexpurgated record that the information therein is very serious, is relevant to the type of criminal incident herein (and the arresting officers’ behavior in such situations), and was in the OCU’s possession before the entry of defendant’s guilty plea. There is no evidence that the Assistant District Attorney who prosecuted this case was aware of this information. Indeed, OCU intentionally concealed this information from those other Assistant District Attorneys not involved in the corruption investigation, in order to avoid compromising the investigation.
The first issue presented is whether, by agreeing to plead guilty, the defendant has waived his right to litigate all factual issues which could have been litigated at trial, including the issues which could have been raised using the exculpatory material which was not provided to him. The Court of Appeals has not decided this issue, but it arguably has hinted that such a waiver might include waiving the right to contend that the People failed to turn over exculpatory material prior to the plea. (See, People v Jones, 44 NY2d 76, 82, cert denied 439 US 846.)
The Appellate Division, Second Department, has in fact held that a plea agreement signals an agreement not to litigate the factual elements of a crime charged; since exculpatory materials go to the issue of factual guilt, the Court reasoned, any complaint about them is waived by the guilty plea. (See, People v Day, 150 AD2d 595, 600, lv denied 74 NY2d 807.) Inherent in this approach is perhaps the principle that an innocent man would never plead guilty, and therefore the availability of evidence which appears exculpatory in nature could not in fact have actually influenced the decision as to whether to plead to the crime charged. This belief, while admirable in its noble perception of our judicial system, does not reflect the reality of plea agreements, where numerous *972 factors go into a decision as to whether to plead guilty to a particular charge.
The Third Department has recognized this and has held that a defendant must be permitted to withdraw a plea of guilty if the prosecutor failed to disclose exculpatory material and there is a reasonable probability that defendant would not have pleaded guilty had the material been disclosed. (People v Armer, 119 AD2d 930; People v Ortiz, 127 AD2d 305.) That this must be the correct rule is dictated by a hypothetical situation, for example, in which a defendant pleads guilty to a reduced charge in order to avoid a possible murder conviction where the defendant was identified as being at the scene and has no alibi to offer, but in which the People are aware of another witness who actually saw the crime, and can positively identify another as the perpetrator. Had the defendant been aware of this evidence, it is almost certain he would have insisted on his right to trial by jury, and it would be grossly inappropriate to deprive him of the right to complain if the People fail to disclose this exculpatory evidence prior to his plea. This is also uniformly the Federal rule, where the decisions point out that due process requires that the defendant be permitted to make as informed a decision as possible before waiving his constitutional right to trial by jury, and awareness of exculpatory material in the hands of the People is a part of due process. (Miller v Angliker, 848 F2d 1312, cert denied 488 US 890.) This court agrees. (See also, People v Benard, 163 Misc 2d 176 [NY County 1994, Benitez, J.].)
Accordingly, the court must first determine whether the People withheld exculpatory material from the defendant prior to the plea and, second, if so, whether the earlier disclosure of such material would have materially affected the defendant’s decision to plead guilty. The Brady rule (Brady v Maryland, 373 US 83) is straightforward. Prosecutors must disclose exculpatory material in their possession or control. (See, People v Vilardi, 76 NY2d 67; People v Simmons, 36 NY2d 126.)
The People do not actually contest whether the undisclosed information is Brady material. Nor do they contest whether this information was in the possession and control of the People for Brady purposes, even though it was not known to the Assistant District Attorney prosecuting the defendant.
In Benard (supra) the court held when the exculpatory information is not directly related to the case at issue but, *973 while not known to the Assistant District Attorney prosecuting the case, it is in the hands of the same large law enforcement agency, it need only be disclosed to the defendant if he makes a specific request for the information. (See, United States v Joseph, 996 F2d 36, cert denied — US —, 114 S Ct 357.) The difficulty with applying such a rule here is that the People have advised the court that they deliberately concealed the investigation of the 30th Precinct from Assistant District Attorneys not involved in the corruption investigation. While this may have been quite reasonable in order to protect the integrity of the investigation, in such circumstances defendants cannot be expected presciently to presume that such information exists and be required to specifically request it. Had defendant specifically asked for materials related to the officers, the Assistant District Attorney would still have taken the position that the material at issue did not exist. This problem may arise where law enforcement understandably attempts to pursue an investigation of corrupt officers while keeping such officers in the field and not disseminating the fact of the investigation throughout local law enforcement. However laudable these objectives, they cannot overcome defendant’s due process rights.
The People further allege that the only information here is unrelated to the case at issue and goes only to the general character of the police witnesses. The People thus allege that under Giglio (Giglio v United States, 405 US 150) this information was not required to be disclosed until the eve of trial. No such rule exists. Moreover, here the nondisclosed information goes to the very conduct which the defendant alleges the police officers engaged in here, stealing his money. In a case which will admittedly hinge on a credibility contest between the defendant and the officer, the withholding of the information at issue does not comport with due process.
The motion is granted and defendant’s plea of guilty is withdrawn.